Putnam J.
delivered the opinion of the Court. By the common law the bail has the custody of the principal, and may take him at any time, and in any place. 2 Highmore, 199, and the cases there cited. -The taking is not considered as the service of process, but as a continuation of the custody which had been, at the request of the principal, committed to the bail. The principal may therefore be taken on Sunday. The dwellinghouse is no longer the castle of the principal, in which he may place himself to keep off the bail. If the door should not be opened on demand at midnight, the bail may break it down, and take the principal from his bed, if that *145 measure snould be necessary to enable the bail to take the principal. If the principal should be arrested at the suit of the queen on civil process, while in the custody of the bail, the principal shall be turned over to the bail. In the comprehensive words used by the court in 6 Mod. 231, case 339, the bail have the principal always upon the string and may pull it when they please, to render him in their own discharge. The bail may seize the principal himself or depute an agent to take him. Nicolls v. Ingersoll, 7 Johns. R. 145.
In Vermont, in addition to the bail-piece, the law provides 'hat the sureties shall have a warrant from any judge or justice, and another directed to the sheriff and his deputy. And at common law the bail may command the assistance of the sheriff and his officers.
Such would have been the liability of the principal, if he had remained in his own State. Has he discharged himself from his liability and duty by coming within the limits of Massachusetts ? If he has, the State has indeed become as a city of refuge, more effectual than his own dwellinghouse.
It is contended that the liability does not arise from the contract. We think it does, and the remedy is to be according to our laws. Now there is no statute provision here for the granting of a warrant for the bail. He is to act here, if at all, under the provisions of the common law. And we are satisfied that they are sufficient. The obligation which the principal entered into to the bail, was not discharged by stepping across the line of his State. The relation between bail and principal exists here as it did in Vermont, in full force. Why may not the bail enforce his common law right ?
It is contended that the laws of Vermont are of no force here. That is true, and would be as true in regard to any other obligation or contract made in Vermont by one who should afterward come here. The obligation rightfully made there would be enforced here according to our known rules.
But we are particularly referred to the habeas corpus act, § 10, as decisive of the case. Now that would apply to the case of a master belonging to Berkshire who should seize his runaway apprentice or servant in this city. Other cases might tie put; but try the statute by that. The apprentice is unwil *146 ling to go ; it is bitterly against his consent, as manifested ai ^at time. But will any one doubt that the statute does nut apply to such a case ? It follows then that the statute must receive some reasonable and limited construction. It must mean an unlawful removal or transportation. But in the case supposed, and in the case at bar, the party taken has consented to be so taken, by entering into the relation of master and servant, bail and principal.
These principles are recognised in our sister States, in Nicolls v. Ingersoll, 7 Johns. R. 145, it is held, that bail may depute another to take and surrender their principal, and may take the principal in another State and in any place, and may break open the outer door of the house to take him. Pierpoint Edwards became bail for Nicolls in New Haven and deputed Asa Morgan to take the principal. Morgan and an assistant went to the house of Nicolls in Green county, New York, at midnight, and demanded that the door should be opened ; which not being done, they broke it open and took Nicolls out of his bed, in virtue of the bail-piece. He was forced to go to the river and into a boat, in which they crossed the river to Hudson. The court say, that the power of the bail does not depend upon any process, but results from the nature of the undertaking by bail ; that it is not affected by the jurisdiction of the court or of the State ; but that as between the bail and his principal, the controlling power of the former over the latter may be exercised at all times and in all places.
In United States v. Bishop, 3 Yeates, 37, Crémor became special bail for Bishop in Virginia. The principal was tried hy a court-martial in Pennsylvania, and the bail followed him there. The court held that they could not take him out of the hands of the military tribunal, but that after the sentence should be executed, he should be delivered to the bail.
The Court are of opinion that Thompson must be surrendered to the respondent.[1]
Parker C. J.
added, that this decision has reference only *147 to the relation subsisting between these United States ; whether it would apply if the parties came here from a foreign nation, it is not necessary to determine.

 See Pease v. Burt, 3 Day, 485; Parker v. Bidwell, 3 Connect. R. 84 Ruggles v. Corey, 3 Connect. R. 421; Johnson v. Tompkins, 1 Baldwin, 578 Broome v, Hurst, 4 Yeates, 123; Bead v Case, 4 Connect R. 166.