Turner v. Wilson.

---

TURNER v. WILSON.

BASTARDY.—*Judgment for Support of Bastard Child not a Debt.—Imprisonment.—Constitutional Law.*—A judgment against a defendant in a bastardy proceeding, for a sum of money for the support and maintenance of a bastard child, is not a debt within the meaning of section 22 of article 1 of the tardy proceeding, after judgment against the defendant, may, by virtue of his bail-piece, take the defendant at any time, in any house or place, in any county, state, or territory.

constitution; and the defendant may in such case be imprisoned.

SAME.—Where a defendant in such case has been arrested, and has given bail, it is not necessary that he should be in actual custody of the sheriff at the time, to enable the court to render a judgment of committal.

SAME.—*Defendant Arrested by His Bail.*—The bail of a defendant in a bas-

From the Jennings Circuit Court.

*D. Overmyer*, for appellant.

BIDDLE, J.—Petition for a writ of *habeas corpus*, by the appellant against the appellee. The appellee waived service, produced the body of the appellant in open court, and the cause was submitted by agreement, on the following statement of facts:

" That verdict and judgment were rendered against the com-

plainant at the September term, 1874, of this court, in an action by the State of Indiana, on the relation of one Lizzie Bowen, against said complainant Turner, charged with being the father of a certain bastard child, begotten upon the body of said Lizzie; that prior to and at said term of court, this plaintiff was not in custody, being out upon bail, as provided by statute, and he was not in custody at the time of the rendition of said judgment therein; and said judgment proceeds as follows: ' And the court now adjudges that the defendant shall pay to the said relatrix the sum of three hundred dollars, for the support and education of said bastard child, payable as follows, to wit: That he pay to said relatrix the sum of fifty dollars within sixty days from this date; and that he pay her thereafter the further sum of fifty dollars every twelve months until he shall have paid the full sum of three hundred dollars; and that if he fail to make any of said payments at the time the same becomes due, the clerk of this court shall issue execution therefor, to be levied of the property of said defendant and his bail, as in other cases. And it is further adjudged by the court, that the said defendant pay the costs of this prosecution, and that he stand committed until said judgment is paid or replevied.' And the complainant, when the jury retired, being on bail as aforesaid, returned to his home in Seymour, in Jackson county, Indiana, and was not present in person when said verdict was returned into court, nor when said judgment was rendered, but was present all the while by attorney; and that afterwards, on the 5th day of December, 1874, said William H. Shields, who was surety on said Turner's recognizance bond in said bastardy prosecution, procured the clerk of said Jennings county to place in his hands a copy of the recognizance, which is fully set forth in said petition of the complainant herein, and said Shields placed said copy of said recognizance in the hands of the sheriff of Jackson county, Indiana, who thereupon, by virtue of said copy, arrested the complainant in the city of Seymour, Jackson county, Indiana, and endorsed upon said copy the following words: 'Arrested Dr. Abram Turner, within named, and

now deliver him to the sheriff of Jennings county, this 5th day of December, 1874. SAMUEL S. EARLY,

'Sheriff J. County.'

" And it is agreed, that at that time said Early was sheriff of Jackson county, and that said William B. Wilson was at that time, and is now, the sheriff of Jennings county, and that the sheriff of Jackson county aforesaid arrested the complainant, transported him thence to Vernon, in Jennings county, and placed him in the custody of said sheriff Wilson, in whose custody he has ever since remained, and still remains; and that said judgment against the complainant has not been paid or replevied, and that said sheriff claims to hold this complainant in custody by virtue of said judgment."

The recognizance referred to in the above statement of facts was in the usual form, conditioned that the appellant would appear before, etc., at, etc., on, etc., " to answer to the charge of bastardy, and abide the order of said court, and not depart thence without leave," etc. The bail-piece was an authenticated copy of the recognizance under which the appellant was brought from Jackson county and delivered to the sheriff of Jennings county, as aforesaid. This was all the evidence in the case.

The court below refused to discharge the appellant, and remanded him to jail until the judgment be paid or replevied.

The appellant appeals to this court, and insists:

1. That the law under which he stands committed is unconstitutional.

2. That, if constitutional, he could not be committed to jail, because he was not in custody at the time the judgment was rendered; and,

3. That his surety had no right to arrest him in Jackson county and bring him to Jennings county by virtue of the bail-piece.

The unconstitutionality of the act under which the appellant was committed (2 G. & H. 624), as to the power of imprisonment, is elaborately urged upon us. It is claimed that the judgment under consideration is a debt, within the meaning

of section 22, art. 1, of the constitution, which abolishes imprisonment for debt, except in case of fraud.   We are of a different opinion.   A debt is a sum of money due by agreement.   It must be certain as to amount, and arise upon contract.   Under the system of common law pleading, at the time the constitution was adopted, and before the distinction between forms of action was abolished by the code, the word "debt" in law had no other meaning.   We must suppose, therefore, that the framers of the constitution so understood and used the words.   Nor could the words of the constitution be fairly understood in any other sense.   In the section cited abolishing imprisonment for debt, the words, "any debt or liability thereafter contracted," are expressly used.   Besides, the question was fully examined in *Lower* v. *Wallick*, 25 Ind. 68, and there deliberately settled.   This case has been approved and followed, in *The State* v. *Hamilton*, 33 Ind. 502, *Ex Parte Voltz*, 37 Ind. 237, *Ex Parte Teague*, 41 Ind. 278, and *Reynolds* v. *Lamount*, 45 Ind. 308.   And the same interpretation is given to the word "debt," as used in the constitution, in *McCool* v. *The State*, 23 Ind. 127.

The distinction between tort and contract exists in the nature of things, and cannot be confounded or abolished by law. One arises by agreement; the other from wrong.

A constitution which abolishes imprisonment for debt does not prohibit the legislature from passing a law to imprison on judgments founded on torts.   Cooley Const. Lim. 341.

None but honest debtors are protected from imprisonment for debt; wrong-doers and dishonest men cannot claim the exemption.   The act of begetting a bastard child is a tort, contrary to good morals, and a wrong against society; and, to place the obligation imposed by law to support a bastard child upon the same ground with a debt arising by agreement, and to give to such a *tort-feasor* the privileges which are granted only to an honest debtor, would be to confound right and wrong, protect the wrong-doer by law, and impose the obligation due from him upon those who are not guilty of any transgression.   Such an interpretation of the constitution

would be unwarrantable, and render that instrument a curse rather than a blessing.

With the severity, laxity, or policy of the law, the court has nothing to do. That is a question for legislative discretion, not judicial interpretation. The power to imprison for torts injurious to the public, and for fraud subversive of private rights, is not denied by the constitution; its exercise must be left to the legislature.

It is claimed that the court could not originally have committed him, and, therefore, could not remand the prisoner to jail, because he was not in custody at the time the judgment was rendered. After the appellant had been arrested, and had given bail, and was in custody of his bail, it was not necessary that he should be in actual custody of the sheriff at the time, to enable the court to render a judgment of committal. This point is decided in the case of *Lower* v. *Wallick, supra,* but upon other grounds.

From the admitted facts in this case, we are not prepared to decide that the appellant was not in legal custody at the time the judgment was rendered. He had been arrested. He gave bail, as provided by statute. He was present at the trial until the jury retired, and then went home, " but was present all the while by attorney." A person arrested by law, and put in the custody of the law, remains in custody, either actually or potentially, until he is discharged according to law. Letting the appellant to bail and allowing him a trial without being in actual custody, was no waiver on the part of the relator, and his voluntary absence cannot be allowed to impair her right or restrict her remedy. No one can take advantage of his own wrong. A defendant cannot be heard to complain of his voluntary absence during the trial of his cause. *McCorkle* v. *The State,* 14 Ind. 39. While he was on bail, he was in the bail's custody, within the meaning of the law.

It is also insisted, that a surety in a bastardy prosecution has no lawful right to deliver up his principal, and be released from liability on his bond. There is no difference in a bastardy case in this respect from any other case. The rule

is the same in criminal and civil cases. *Gray* v. *Fulsome,* 7 Vt. 452 ; *State* v. *Thompson,* 3 Jones N. C. 365 ; *Blood* v. *Morrill,* 17 Vt. 598 ; *Simmons* v. *Adams,* 15 Vt. 677 ; *Mather* v. *Clark,* 2 Aik. 209. The common law right, as between the parties, of a bail to take his principal at any time, at any place, and under any jurisdiction, has remained unimpaired during more than two centuries. In the quaint language of the old books, " the bail have their principal always upon a string, and may pull the string whenever they please, and render him in their own discharge." In this country, for anything the principal can complain of, the bail may, by virtue of his piece, take him in any house or place, in any county, state, or territory, on Sunday or any other day, in the night time, or at any time, and, upon demand, may break open doors. He may call persons to assist him, and they will be justified by his command. This right is strictly and uniformly upheld by all the authorities. Our code, in this respect, is in harmony with the common law. 2 G. & H. 126. See, also, the following authorities : Tidd's Pr. 53, 147 ; Com. Dig. Bail ; Bac. Abr. Bail ; 6 Mod. 231 ; *Sheers* v. *Brooks,* 2 Henry Bl. 120 ; *Pyewell* v. *Stow,* 3 Taunton, 425 ; *Nicolls* v. *Ingersoll,* 7 Johnson, 145 ; *Commonwealth* v. *Brickett,* 8 Pick. 138 ; *Parker* v. *Bidwell,* 3 Conn. 84 ; *Read* v. *Case,* 4 Conn. 166 ; *Harp* v. *Osgood,* 2 Hill N. Y. 216 ; *Respublica* v. *Gaoler,* 2 Yeates 263 ; *Pease* v. *Burt,* 3 Day, 485 ; *Ruggles* v. *Corey,* 3 Conn. 419 ; *Johnson* v. *Tompkins,* 1 Bald. 571.

There is nothing in this record of which the appellant has a right to complain.

The judgment is affirmed, with costs.

PETTIT, C. J.—I totally dissent from the opinion in this case for these reasons :

1. The provision of the bastardy act, which provides that, after judgment for money has been rendered, the defendant shall be imprisoned till he pays or replevies the judgment, is a clear and palpable violation of both the letter and spirit of

the twenty-second section of the first article of our constitution, which is this :

" The privilege of the debtor to enjoy the necessary comforts of life shall be recognized by wholesome laws, exempting a reasonable amount of property from seizure or sale for the payment of any debt or liability hereafter contracted; and there shall be no imprisonment for debt, except in case of fraud."

The ingredient of fraud is not in this judgment for bastardy. Webster defines debt thus : " That which is due from one person to another, whether money, goods or services ; that which one person is bound to pay to another, or perform for his benefit; that of which payment is liable to be exacted ; due ; obligation ; liability." A judgment for money is a debt, no matter what the cause of action was, whether tort or contract ; the judgment is a debt of record, and the debtor cannot be imprisoned to force or coerce the payment of it, " except in case of fraud," which does not exist in this case.

2. The bastardy act, unconstitutional as it is as to imprisonment after judgment, does not allow imprisonment after judgment, if the defendant is not in custody when the judgment was rendered. This case shows that the defendant was not in custody at or during the trial, verdict, and judgment, but was under bond, and when the verdict and judgment were rendered, he was absent and in another county, and that the court had no control of his person.

3. The surety on the bond of the defendant in a bastardy case cannot, after judgment, arrest and surrender his principal to the sheriff, and thereby discharge his liability on the bond. The bond will remain in force, and can be recovered on against the surety by suit on it.

I think the judgment ought to be reversed.

WORDEN, J.—I concur in the second and third propositions contained in the foregoing opinion of Judge PETTIT. The word " custody," as used in the bastardy act, is used in a sense that excludes the idea that when the accused is out on bail he

is in custody within the meaning of the act; and not being in custody, the court had no authority to commit him, according to the terms of the statute.

The terms of the bond, as provided for in section 4 of the bastardy act, exclude the idea that after judgment in bastardy the bail may be exonerated by the surrender of the principal. There is no statute applicable to the case providing for such surrender and exoneration.